It's 243140 and we'll hear from Mr. Bill. Good morning and may it please the clerk. Imagine a newlywed couple decide to establish a joint bank account right after they get married. They're young, they don't have a lot of money, so between the two of them they make a rule. Nobody spends more than $100 without the other one's permission. The husband is a golf fanatic and one day he's at a store and he sees a new putter for $200. He doesn't ask the wife for permission because he knows you won't get it, but he writes a check for $200 and buys the new putter. Has the husband just committed bank fraud? He's a signatory of the account, he's authorized by the bank to write checks on the account. Did the husband lack authority to write that check or did he abuse his authority to write that check? Ms. Martin was charged with bank fraud because she had the authority to write checks from her employer. It was a signatory on the account, but abused that authority to write checks from that account to pay her personal creditors. No misrepresentations went to the bank. She didn't claim that she had signatory authority. If she had said to the bank, I actually embezzled this check for $1,000. It's not forged. Here's my ID. I want to get $1,000 cash or to put it in my personal account. Would the bank have honored that check? Would it have been obligated under your view to honor that check? I believe the bank's authority in that circumstance, even given that additional information, is simply to compare whether she's a signatory on the account and then honor the check. Now, practically speaking, the bank likely would have made some inquiries in the face of her statements outside. Well, let's say it inquired and it found out, well, okay, it looks like she stole that check. But, you know, she's a signatory on the business account. And so the real question is, would the bank have been obligated to honor that check? And if the answer is no, then she would have obtained that check by fraudulent means against the bank, necessarily. I think, strictly legally speaking, Judge, the answer is yes. The bank would be obligated to honor the check as long as she remains a signatory on the account. The bank's job, legally speaking, is very limited under this circumstance. And if she is a valid signatory on the account, regardless of what happens outside of it, legally speaking, the bank is obligated to honor it. Would the bank have been aiding and abetting a state crime of embezzlement by allowing her to knowingly to have embezzled money, a state crime, against her employer? No, Your Honor, I don't think it would have aided and abetted because its obligations are governed by the signatories to the account and what it has to do. So in that point, it has an automatic superseding duty to honor the check, regardless of what statement she makes when she shows up at the teller window with the check. In this instance, there's no evidence that any statements about embezzlement or not embezzlement or any inquiry in the bank or communication to the bank happened here. This was a simple case of the bank getting checks by an authorized signer and honoring them. Again, no misrepresentations went to the bank, and there are certainly no misrepresentations that went to the bank that caused it to pay the checks that were delivered to it. Counsel, can I ask you on that point, in the plea agreement, Ms. Martin agreed to certain facts, and one of the facts was that she, quote, used fraudulent pretenses to obtain money from the banks. So how do we square that argument with her agreement that she engaged in fraudulent pretenses? She did nothing beyond just present the check. Your Honor, I think that, as you'd recognize, that's legal language cast in the language of the statute, that fact from the plea agreement. And her agreement to that was based on the deficient advice she got from counsel. We would not expect a lay person to understand the legal implications of that term or that sentence about what she agreed to. And had she gotten effective advice from counsel, then she obviously would not have agreed to that statement in the plea agreement. Yeah, but how can we conclude that? I mean, Ms. Penner's affidavit makes clear that, in her interactions and discussions with Ms. Martin, that Ms. Martin never disputed the facts, that she was obtaining all this money for a personal gain that was beyond the authorization, to use your words, that she had in terms of those checks. So how can we conclude, looking at the affidavit, that Ms. Martin would have said, well, now that you tell me what fraudulent pretenses mean, there's no way I can agree to that fact? I think had she been told what the bank fraud statute was required and what the government was required to prove under that statute, then there certainly would have been an objection. I don't think there's a lot of dispute between the parties about the factual underpinnings of this offense. The dispute is whether it was charged as the correct crime and whether that criminal offense the government could prove the element of obtaining by misrepresentation. And at the very least, Ms. Martin was owed that advice about that element so she could make an informed decision about whether to accept the plea agreement or not. So your argument is that even if she admitted her conduct, that conduct wasn't sufficient to constitute a misrepresentation under the statute and she was misadvised as to that aspect of it. Correct. She didn't know the impact of the conduct. Correct. She was never informed that one of the elements of the offense of this offense was that the government would have to prove that she obtained bank property by a misrepresentation that would make its way to the bank. And she was at least owed that explanation of the law before she made a decision about her plea. You're not suggesting, are you? And I think you're focusing in on Judge Melgren's determination that there was an implied misrepresentation here. So there's no one suggests there was anything in writing. No one suggests there was any actual conduct other than just the presentation of the check. Is that correct?  But you're not suggesting, are you, that conduct could never be form a misrepresentation? Oh, no. Conduct can form misrepresentations. There are 10 specific cases quoted in the government's briefing where it says presenting an instrument coupled with some sort of conduct can create the necessary misrepresentation. That's just not what happened in this case. Showing up with the check and standing there with it is not conduct as such. Correct. There's no additional assertions or anything outside of the check. The fact that she did this regularly, nothing like that. I don't think that there's, given the precedent that, you know, a valid check signed by a signatory doesn't contain an assertion, I don't think there's any authority or reasoning that says that cumulative conduct somehow converts what in one instance would not constitute to be an assertion when even one of them wasn't. In any instance, as our brief puts out, the implied authority argument that the government makes has been rejected any time it's been addressed by the courts just on its own. Certainly there are cases, as Judge Moritz points out, where conduct coupled with presentation would equal a false statement or a false representation. A mere presentation alone by an authorized signatory does not contain some implicit authorization. The most recent case, and I'll supplement it with a supplemental authority letter, was out of the Seventh Circuit just last month, and U.S. v. Robinson, 161 F. 4th, 1069, where the Seventh Circuit explicitly rejected the implicit authority argument that the government makes here. Counsel, can I ask you about your prejudice arguments? Certainly. It seems, if I make sure I have this correctly, that when you were comparing the prejudice analysis that was done for the tax case accounts versus the non-prejudice analysis, what we don't have for bank fraud, I think you made your point maybe in the reply that Ms. Martin says that she would not have gone to trial because any time in prison was too much. It was sort of all or nothing. First of all, did I sort of correctly frame that? That she would not have gone to trial? Or that she would have gone to trial, excuse me, because to her, if she had any exposure to prison time, it wasn't going to be worth it for her. Correct. Ms. Martin's position would have been that if she would not have accepted something that contained the realistic possibility of a term of imprisonment. So then when we think about any relief to afford to her, we have to find prejudice then on both the tax offenses and the bank fraud count. Your Honor, I think that because the district court didn't address prejudice as to the bank fraud count, I think the proper course would be to remand it for the district court to examine prejudice after reversing it on its deficient performance. As to prejudice on the tax count, I think the court should remand it with instructions to the district court to use the appropriate legal standard. I don't think that this court is in a position in the first instance to make a prejudice determination on either of those counts. Can I double-advocate with you on the tax count?  Mr. Brown argued for affirmance on alternative grounds based on harmlessness, and I didn't see you with a rejoinder in your reply brief on the harmlessness argument. And we do have some cases, published cases, saying that if an appellate doesn't respond in a reply brief to an argument for affirmance on alternative ground, they waive any non-obvious defects in that argument. So have you waived any non-obvious defects in Mr. Brown's argument on the tax count on prejudice based on harmlessness? I don't think so, Your Honor. I think because this court's long-standing precedent has been on a question that involves facts that you remand to the district court to make the factual determinations. Here, the district court used a flawed, what we consider to be an incorrect legal standard to address the prejudice standard, and so therefore the overwhelming majority of this court's precedents say that the proper vehicle is to remand to analyze it under the proper legal standard. I see I have two minutes remaining and I neglected to reserve time for rebuttals, so I'll do that now, unless the court has any other questions. Thank you. Good morning, Your Honors. James Brown for the United States. Your Honors, this court says that for counsel's advice to be deficient under stricken must be completely unreasonable. Counsel's advice in this case was not completely unreasonable because it was consistent with this court's own interpretation of 1344-2 as well as this court's case law. In United States v. Kane, this court said, quote, a defendant's misrepresentation to a bank that he or she is authorized to engage in a particular transaction may constitute a violation of 1344-2. That language applies to defendant's conduct in this case, and that language in this court's case law provided an objectively reasonable basis for counsel's advice. Now, could counsel have been more imaginative and advised a defendant about all the potential defenses or novel defenses or his interpretation of law for him? Yes, but counsel is not required to advise of all potential defenses or novel defenses or unsettled defenses. Counsel's advice just has to be within prevailing professional norms, and that's what we have here. Let me play devil's advocate with you, Mr. Brown. Now, we do have cases saying that counsel isn't necessarily unreasonable or deficient in failing to present every plausible argument, but Judge Ebell wrote an opinion in Heard v. Addison that said that at prong one, counsel was deficient because the argument that counsel failed to advise the client about was a very strong argument. And so it seems to be that there is a continuum. If it's just simply one of many possible arguments, maybe counsel isn't deficient, but under Heard, if it takes on... if it's a powerful, good argument, you'd have to acknowledge that that counsel was deficient in failing to advise counsel of a client of a good argument, right? In most cases, we would be constrained to agree with that, but we would also respond that this was not a very good argument. It was hardly even a colorable argument. In fact, I don't even think it's a colorable argument when you look at this court's case law. In the Cain statement that I just quoted, that basically applies to counsel's conduct. And then you have four cases from this court where we have implied misrepresentation cases, and I'm referring to the McDonald case, the Briggs case that was cited with approval in McDonald, the Morgenstern case from the Second Circuit that was cited with approval in McDonald, and then the Adams case from the District of New Mexico. Each of those was an implied... And they were all pre-Loughran, and McDonald was unpublished in 2006, right? And so then the other case that was pre-Loughran was relying on this unpublished pre-Loughran case, McDonald, right? You haven't cited anything after Loughran. Well, you know, that's correct. But let me discuss those cases, and then I'll get to Loughran. Why don't you discuss the post-Loughran cases from other circuits, such as the one that was just mentioned, or the McDonald case from the District of Virginia, where the court has very clearly said, yes, there is no such thing as implied representation in this very scenario. I mean, those are post-Loughran cases. Both are published. That by itself... And they relied on Loughran. That by itself should be evidence that this was certainly a plausible defense. It's been made and accepted post-Loughran very clearly. And I think you can read the language of the statute and see that it's a plausible offense. So why was it reasonable not to do that, to read the language of the statute, to think about this in terms of the facts that were before this, with this attorney knew, which is that she was a signatory and had authority to write those checks? Why was that not a plausible and complete defense that should have been considered? Two responses, Your Honor. The first is with regard to the court's questioning about the McDonald case cited by the defendant. That was decided on May 24. I understand that. But it was decided based on Loughran. Well, but it was... And my point is, this court could have, Judge Melgren could have done the same thing had someone presented him with the Loughran case and made that argument. Well, but we look at whether counsel's advice is deficient in light of prevailing professional norms. And when counsel advised the defendant of this, that was not part of the prevailing professional norms because that case was not decided. It wasn't when this case was decided either. The point is, somebody's got to make the argument, but that doesn't make it a novel argument. The fact that no one's made this argument post-Loughran doesn't make it novel or implausible. Well... This is a very plausible argument that just wasn't made. Well, we don't agree that it was a plausible argument that just wasn't made. Counsel was not completely unreasonable for not making that argument. I didn't say counsel was completely unreasonable. I'm saying it was a plausible argument and it was a complete defense. If counsel was not completely unreasonable, there's no deficient performance. Now, with regard to Loughran... I don't think completely unreasonable is the standard in terms of not raising a defense. It is the standard. This Court says that for counsel's advice to be deficient under Strickland, it must be completely unreasonable. Well, what is completely unreasonable when a complete defense is potentially obvious from the language of the statute itself and post-Loughran, which was decided in 2014, is clearly an available argument? Well, the Court keeps saying... What is completely unreasonable? Well, it has to be, like Judge Baccarat said, we can look at things on a continuum. At the time of counsel's advice, no court had decided that. That was a logical reading that he infers from Loughran. Loughran didn't say that. Loughran was not an applied misrepresentation case. And that's why it's distinguishable. It didn't address checks submitted under false pretenses. That's what happened in this case. So a reasonable counsel could look at this and say, hey, Loughran didn't address a check submitted under false pretenses, as this case does. In Loughran, the checks were altered or forged. The falsity was facially evident in the check. That was the false statement. A false pretense is a fact that is not disclosed or somebody has a duty to disclose it. She didn't disclose that she didn't have the authority from her employer to write any of these checks, and she had a duty to disclose that. Like Judge Baccarat said, if she had gone to the bank with a check and said, I don't have authority from my employer to draw this check or cash this check, that would not be a false pretense. But she had a duty to disclose that. She didn't. What about the fact that we've defined false representations consistently as either express, stated, oral statements, or not implied conduct, never said implied, but conduct, actual conduct of some sort? Well, we've never, that I've said, really studied this idea that Judge Melgren came up with or that was presented to him by the government that some sort of implied representation, no physical manifestation of that in any way, can constitute a false misrepresentation under this statute. Well, we would disagree that the statute does not include implied representations, because the statute uses the term false pretenses. A false pretense is an implied misrepresentation. Do you think pretenses and misrepresentations here are one and the same? No. False pretenses is distinct. False pretenses is an implied misrepresentation or an implied false statement. A false representation, on the other hand, is an expressed misrepresentation. And I get that from the Baumgartner case that we cite in our brief. There are two distinct things. And this court has used implied false representations in four cases. Well, in one case, McDonald, it talked about implicit false representations. In Briggs, which this court cited with approval, talked about implicit misrepresentations. In Morgenstern, they were implicit misrepresentations. In the Adams case, the checks were perfectly valid, but there were implicit misrepresentations. So counsel could look at these four cases and say, hey, and the statement that I just quoted in Cain, and say, hey, this is a false representation case. The Lofgren case doesn't cover false pretenses. It doesn't cover false pretenses. There's four cases that do cover false pretenses. And those cases fit the facts of my case. And then I have the statement from Cain that I have to consider that comes directly from this court. How does counsel make an unreasonable decision not to advise a defendant about the defense that was basically first stated in a case decided one and a half years after the defendant entered her plea? Counsel, can I ask you, though, about the evidence that we have before us, and Ms. Pinter's affidavit in particular? As I read the motion to vacate, Ms. Martin says explicitly that she was not told that the elements required that she use deception as a way to obtain bank property. And then I look at the affidavit, and Ms. Pinter doesn't really take on that element at all. She talks generically about the facts and the evidence meeting the elements, but she doesn't discuss this particular theory of defense at all. It's alleged in the motion to vacate, and there seems to be, then, some gaps, then, in whether or not she's even rebutting that allegation. Am I reading that correctly? Maybe, maybe not, depending on how the court interprets what I'm going to cite at Record Volume 1, page 162, where Ms. Pinter states that the defendant wrote numerous checks that named her as the payee, which resulted in funds being withdrawn from the employer's bank account. She did this without authorization, and in doing so, misrepresented to the employer's banks that she was authorized to receive the funds. So there you have Ms. Pinter talking about the misrepresentation, the implicit misrepresentation. She also, though, says that she doesn't talk about case law or review the applicable PIC instructions with her client. And that kind of stood out to me. I mean, I'm a Kansas lawyer, and this is federal court, and typically, the instructions we come up with for federal offenses are not from the patterns instructions in Kansas. So it at least gives me pause as to whether or not Ms. Pinter is even rebutting the allegation made. Well, she looked at the statute, which talks about false pretenses. She concluded that the defendant engaged in false pretenses or implicit misrepresentations to get the money. And we think that that sufficiently shows that her advice was not completely unreasonable, even if she didn't cite any cases in her affidavit or consult the PIC, as the court points out. How do you read the district court's order, though, to not hold an evidentiary hearing? Judge Melgren sets out the standard, but doesn't actually, as I read it, explain why he doesn't hold a hearing. So how does the government read that? The only way we can read it is that counsel's affidavit said that, basically, the defendant had no memory of the offense anymore because she had a stroke. And what would be the point of having an evidentiary hearing if you couldn't put on the defendant because she would just say that she can't remember anything from the offense? So what would be the point? The court just looked at the offense, but also it's probably an easy case for the court because these are implied misrepresentations. There's four cases on point for implied misrepresentations. The statute talks about false pretenses, and false pretenses are implied misrepresentations or implied false statements. So the court probably thought this is an easy case on the law, and that's the only thing that's an issue. And the only case the defendant cites is a case cited a year and a half after the defendant entered a plea, keeping in mind that counsel's advice only has to be reasonable under prevailing professional norms. And at the time, counsel was not required to read Laughrin as even addressing false pretenses or implicit misrepresentations. It wasn't even applicable. Now, could counsel have been more imaginative and thought, hey, I can say that Laughrin really does address false representations or false pretenses, even though it doesn't talk about them. And I can say that because this wasn't an express representation, it must apply. And I can say this, that, or the other thing. But that doesn't mean that counsel's advice under prevailing, then prevailing professional norms, was unreasonable. What about, Mr. Brown, a check-kiting scheme? Let's say, hypothetically, I decide to supplement my income by running a check-kiting scheme. And I've got an account with Oklahoma Bank. Have I committed any implied misrepresentations or explicit misrepresentations to the bank? Well, you know, the court is probably trying to trap me with the Williams case. Well, gosh, I am not that devious, Mr. Brown. I asked you a question. That being said, it's not a false statement for 18 U.S.C. 1014 under Williams. Is it a false representation? It might be. It might be a representation that the funds are actually there, or that the drawer promises to pay those funds. So it is a fair inference that it is a misrepresentation? For the bank fraud statute, not for 1014, which is the false statement statute. Why in footnote 4 of Lawford did the Supreme Court say that every single circuit court to address the issue has found that a check-kiting scheme does not violate 1344.2? Well, you know, that's what the court was saying. And they were saying this within the context of the false statement statute and whether an insufficient funds is a false statement statute. You know, and I understand what the court is saying. But I'm saying that there's another way to look at it. And I can't explain why every other court did that. But I can see the court's point. It's very well taken. But I don't think we need to get there.  Slow down. We'll give you more time, as much time as you want. I'm not trying to trick you. I'm really not. I was just joking, actually. I know. But I'm just really trying to ask you a question. And I'm not sure that we're communicating. So I just wonder if this is a misrepresentation, and if the Supreme Court implicitly is saying every single circuit court to address the issue has found that that scheme, despite the implicit misrepresentation that's inherent, does not violate the very statute that we're talking about, 1344.2. I'm really trying to figure out, how do I reconcile footnote 4 with your argument? Well, you know, I would have to look at the cases that the court is citing. I haven't looked at those cases or looked at the basis for those courts' decisions. I suppose the court can say that if somebody writes a check for $1,000 and they have $10,000 in their account, is that check a false statement? That check basically promises whoever the payee is that they have $1,000 in their account, because a check is a promise to pay. Is the promise to pay a misrepresentation? It could be. Is it a false statement? No, because William says it's not a false statement. If the check is forged, then we know it's a misrepresentation or false statement under Laughrin, right? So there's some argumentative wiggle room there to flesh out exactly what is what. But here, all we have to know, we have to decide whether counsel's advice was completely unreasonable. It was not completely unreasonable under Laughrin. It was not completely unreasonable in the four cases that I've been talking about. It was not completely unreasonable under the plain language of the statute, which talks about false pretenses. What about Williams? It's an old case, but doesn't it say that a check doesn't contain any representation whatsoever? It can't be true. Counsel was not required to give any credit to those statements, because number one, that was an 18 USC 1014 case. And number two, and we're going to-  Since when does it matter? A statute that is an entirely different statute, but might contain a similar false misrepresentation type- Well, it matters. Aspect that would clearly apply to this statute, or might clearly apply. And people have been making that argument. It matters. And winning. As defense counsel, can you just kind of put blinders on and say, well, I'm going to look at this statute, but I'm not going to look at anything else that could be related in the bank fraud area. Because I don't need to look at those to represent my client adequately. Is that what you're saying? To that, I would say look at footnote five of our brief, where the law firm court uses the term false statement and false representation repeatedly to describe a forged or altered check. The law firm's use of that term to describe a check is exactly contrary to Williams. That's why counsel was not unreasonable in not relying on Williams, which addressed a different statute. Apparently, the Supreme Court thought the distinction mattered because they said a check can be a false statement or false representation under 1344. I agree there may be some inconsistency between Williams and law firm. And counsel was not unreasonable for saying there's an inconsistency here. I'm going to go with 1344. Well, we don't even know that. I mean, I guess I'm saying to you, we don't have any idea if there was any attempt whatsoever for counsel to even, that counsel even made any evaluation based on her affidavit. We certainly don't understand that. You're basically saying it's totally reasonable for counsel to consider all of these things and then rule them out. That's not really the standard, is it? Well, the standard is whether counsel's advice was objectively completely unreasonable. And there was no advice here, apparently. There was advice. There was advice, if you look at the affidavit, that they talked about the elements and she talked about misrepresentations. And she thought that the- Yeah, no advice that this may not be a misrepresentation, that her conduct might not form a misrepresentation under this statute. No advice like that. And apparently, no consideration of that. There had to have been some consideration of it because we have counsel's representation in the affidavit that she considered that the defendant made misrepresentations and she defrauded the bank by false pretenses. She accepted, counsel did, that those misrepresentations apparently were sufficient. She thought they- Implied misrepresentations. She thought they met the definition of false pretenses and that's what the statute criminalizes. I see my time is up and I thank the panel for the extra time. Thank you.  Mr. Bell, I just want to tell you, it was in a moment of temporary insanity that I told Mr. Brown that you could have as much time as you wanted. I was going to insist on equal treatment. I know. And that's why I wanted to plead insanity to that. I think Judge Moritz's last exchange with the government really encapsulated the issue, at least as it goes to the bank fraud, is that right or wrong, whether it ultimately would have prevailed or not, it was a plausible defense and Ms. Martin should have been informed about it before making a decision about how to plead. And just to give some context about whether it would have been obvious or should have been obvious, in that Robinson case from the Seventh Circuit that I just mentioned, the Seventh Circuit found it was plain error for the district court not to sua sponte enter a judgment of acquittal based on the same facts. So just to give you an idea of how obvious it was and I can't substitute my own experience or judgment with anybody else's, but just looking at the Loughran case, it doesn't seem like there has to be much extrapolation from the statements of the Supreme Court there to Ms. Martin's case to realize Loughran gives you a viable and complete defense. I mean, the statements in Loughran are on the head saying this is what is required for a conviction under this statute. And it's not necessarily phrased in murky 19th century language either. It's pretty stark. Isn't there conflict between Williams and Loughran in the sense that Williams said there's simply no factual assertions at all in a check? There's nothing that can be characterized as true or false. And yet then you have in Loughran the court saying, well, at least the signatory aspect of it can be a misrepresentation. True or false that you have authority to as a signatory. Isn't that inconsistent by itself? I think at first blush, yes, but putting them in context, no. And I see I'm about to elapse my time, so if I could have some time to respond. Sure. Thank you. The context of Williams was in a check-kiting scheme. So in that case, the court's dealing with checks that are signed by a valid authorized signatory. And so just the face of the check, this is a command by a valid person to transfer money to this other party. There's no statement of fact within there. A forged check, though, is different because it itself is false because the person is purporting to be someone they're not and have the authority to command the bank to transfer the funds. So I think once you put the context of what Williams and his project were into, I don't think there's a conflict. I get the context. I just think the statement was broader, as I read it in Williams, maybe than it needed to be. It would have been better if there had been some explanatory clause in the beginning of the no check can be a false statement. But I think the context of what they were dealing with, it's clear that they're talking about, under those facts, by an authorized signatory and everything else. The check isn't altered. It's not forged on its face. It's a valid instrument. All right. Thank you very much. Thank you. It's very well presented by both sides. And by the way, Mr. Bell, do you think in the next, say, sometime in the next three days, could you give us a 28-J letter with that, I guess it's that seven-certed site? And could you do me a favor and not include a whole bunch of argument? All we need is that site. All right. Thank you, counsel.